# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MISTY BATEMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  Case No. CIV-16-338-RAW-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Misty Bateman requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born December 3, 1982, and was thirty-two years old at the time of the most recent administrative hearing (Tr. 127, 578). She completed the ninth grade, and has worked as a cashier and home health aide (Tr. 196, 605). The claimant alleges inability to work since October 1, 2010, due to torn rotator cuffs in both shoulders (Tr. 196).

**Procedural History**

On January 27, 2011, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ J. Frederick Gatzke conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated August 24, 2012 (Tr. 13-24). The Appeals Council denied review, but this Court reversed in Case No. CIV-13-424-FHS-SPS, and remanded with instructions to properly support the RFC findings (Tr. 639-651). On remand, ALJ Luke Liter held a second administrative hearing and again determined the claimant was not disabled, in a written opinion dated December 16, 2015 (Tr. 557-5700). The Appeals Council again denied review, so ALJ Liter's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform a limited range of light work, *i. e.*, she can lift/carry twenty pounds occasionally and ten pounds frequently, and stand/walk/sit for six hours in an eight-hour workday. Additionally, she found that the claimant could not reach overhead with her bilateral upper extremities, but could engage in frequent handling, fingering, and feeling with the bilateral upper extremities, and she could occasionally climb ramps and stairs but should avoid climbing ladders, ropes, and scaffolds. Finally, the ALJ limited the claimant to simple and some less complex tasks (defined as semi-skilled work with a specific vocational preparation of 3-4) (Tr. 563-564). The ALJ thus concluded that the claimant could perform her past relevant work as a cashier (Tr. 569).

## Review

The claimant argues that the ALJ erred by: (i) failing to conduct a proper credibility assessment, and (ii) failing to properly assess her RFC, including her mental impairments.[3] Because the undersigned Magistrate Judge finds that the ALJ did fail to properly evaluate the claimant's mental impairments, the decision of the Commissioner should be reversed and the case remanded for further proceedings.

The medical evidence reveals that the claimant had the severe impairments of bilateral shoulder impairment, obesity, diabetes mellitus, bilateral hand impairment, and

---

[3] The undersigned Magistrate Judge notes that the claimant has failed to comply with LCvR 5.2(a) and 7.1(c) regarding format and the requirements regarding an indexed table of contents, but nevertheless proceeds on the merits of the arguments.

depression, as well as the nonsevere impairments of hip pain, heel pain, and ankle pain (Tr. 560). The medical records relevant to the claimant's mental impairments reveal that the claimant was hospitalized at Sequoyah Memorial Hospital on March 2, 2012, following an altered mental state and suicidal gesture (Tr. 460, 524-526). The claimant asserted on numerous occasions that she was not suicidal, but she had left a note indicating otherwise and was started on medications (Tr. 460, 525, 533). On admission, it was stated that the claimant needed intensive psychiatric behavioral health modification, and the patient (and her spouse) were "defiant and refusing this at this time," but it was considered necessary given her risk to herself (Tr. 526, 528). The claimant was therefore admitted to Tulsa Center for Behavioral Health on March 3, 2012 until she was discharged on March 5, 2012 (Tr. 531). Her discharge diagnosis was major depressive disorder, single episode without psychotic features, moderate (Tr. 531, 542). Her global assessment of functioning score upon admission was a 19, and was 40 upon discharge (Tr. 542).

The claimant did not seek mental health treatment other than medication from her primary care physician. On October 21, 2013, the claimant reported that increased doses of medication had helped her feel "less anxious," and that she was starting counseling soon (Tr. 1010). She reported still having anxiety on January 26, 2015 (Tr. 1569).

On March 9, 2014, the claimant was taken to Sequoyah Memorial Hospital because her husband reported she was threatening to commit suicide (Tr. 879). The claimant admitted suicidal ideation, although she denied any attempt, and stated she had been scheduled to begin treatment at CREOKS Psychiatry (Tr. 879). On March 26, the

claimant presented to CREOKS for intake, and was assessed with recurring depression and anxiety, and give a GAF of 52 (Tr. 1119).

There was no consultative mental status examination contained in this record, nor an opinion from a state reviewing physician regarding the claimant's mental impairments.

In his written opinion, the ALJ summarized the claimant's testimony, as well as much of the medical evidence (Tr. 564-569). As to her mental impairments, the ALJ noted the claimant's testimony regarding her suicide attempt, feelings of worthlessness, and lack of energy, including staying in bed all day at least about once a week, and noted she reported being on a waiting list for mental health treatment (Tr. 565). He noted that her mental health treatment had been "intermittent," and the record of her suicide attempt and initiation of treatment at CREOKS, but found that most of her mental health treatment was prescription medication through her primary care provider that improved symptoms and/or controlled them, although he noted a January 2015 report that the claimant still experiences some anxiety (Tr. 567-568). He further found her not credible, and ultimately determined that she was not disabled (Tr. 568-569).

The claimant argues that the ALJ improperly evaluated her RFC, particularly as to her mental impairment, and the undersigned Magistrate Judge agrees. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court

cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Here, the ALJ failed to cite to any evidence in the record to connect his RFC findings with the evidence related to the claimant's mental impairment, appearing at times to even question the severity of the impairment entirely. Moreover, he failed to account for her foot pain (which causes her to have to wear specific shoes and the record reflects was a subject of frequent treatment notes), as well as her headaches. The ALJ has thus failed to point to medical evidence demonstrating how he accounted for her depression, or her nonsevere physical impairments. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted]. Rather, it seems the ALJ summarized the evidence without reference to the effect of her depression on the RFC despite the fact that "the ALJ's RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013), *quoting* Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7.

Finally, the ALJ entirely failed to mention, much less consider the "cumulative effect of claimant's impairments," at step four. *Langley*, 373 F.3d at 1123. *See also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. "[I]t is incumbent on the ALJ to comply with SSR 96-8p by providing a narrative explanation for his RFC finding that plaintiff can perform [the] work, citing to specific medical facts and/or nonmedical evidence in support of his RFC findings." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013). *See also Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 740-741 (10th Cir. 2007) ("The ALJ's inability to make proper RFC findings may have sprung from his failure to develop a sufficient record on which those findings could be based. The ALJ must make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC.") [quotations omitted].

The undersigned Magistrate Judge also notes that an ALJ has broad latitude in deciding whether to order consultative examinations. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997) (Once the claimant has presented evidence suggestive of a severe impairment, it "becomes the responsibility of the ALJ to order a consultative evaluation if such an examination is necessary or helpful to resolve the issue of impairment."), *citing Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 778 (10th Cir. 1990). Although an ALJ does not generally have a duty to order a consultative examination unless requested by counsel or the need is clearly established in the record,

*see Hawkins*, 113 F.3d at 1168, such an examination would have been helpful in this case to clarify the nature of the claimant's mental impairments along with more specific effects on her functional limitations, particularly when all her impairments were considered in combination.

The undersigned Magistrate Judge further notes that the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. "Generally, if an agency makes a policy change during the pendency of a claimant's appeal, the reviewing court should remand for the agency to determine whether the new policy affects its prior decision." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (*quoting Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007). In light of the ALJ's use of boilerplate language in evaluating credibility in the first instance in this case, the undersigned Magistrate finds that remand for proper analysis under the new guidance would likewise be advisable here.

Because the ALJ failed to properly analyze evidence of record as to the claimant's mental limitations, and well as consider all of her impairments both severe and nonsevere in combination, the Commissioner's decision should be reversed and the case remanded for further analysis by the ALJ. If such analysis results in adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 22nd day of August, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**